```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA,                    :
                                             :   MEMORANDUM & ORDER
            v.                               :   23-CR-178 (WFK)
                                             :
ANDRES ARQUETA,                              :
                                             :
                        Defendant.           :
----------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:**
On June 15, 2023, Defendant pled guilty to Count One of a two-count Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii). Indictment ¶ 1, ECF No. 10; Plea Agreement ¶ 1, ECF No. 28. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 120 months of imprisonment followed by five years of supervised release with both standard and special conditions. Defendant is also required to pay a mandatory special assessment of $100.00.

## I. Background

The New York City Police Department ("NYPD") and the Drug Enforcement Administration ("DEA") conducted the investigation into the instant offense after receiving information about an upcoming controlled substance sale. Presentence Investigation Report ("PSR") ¶ 9, ECF No. 53. On March 23, 2023, Defendant's co-defendant, Raul Morel, contacted an undercover NYPD officer to arrange a meeting regarding a cocaine transaction. *Id.* ¶ 10. That same day, when Morel and the undercover officer met in Queens, New York to discuss the prospective sale, Morel informed the undercover officer he would sell him ten kilograms of cocaine for $285,000.00. *Id.* Following their conversation, Morel texted the undercover officer requesting another meeting to discuss logistics and instructing the officer to meet him at his home in East Elmhurst, New York on March 24, 2023. *Id.* When the undercover officer arrived at Morel's residence, Morel entered the officer's car. *Id.* Because Morel was only in possession

1

of five kilograms of cocaine, the two agreed they would meet again to conduct the sale once he obtained ten kilograms. *Id.*

On March 27, 2024, the undercover officer received a text from Morel; he was ready to make the sale. *Id.* ¶ 11. Law enforcement officers surveilling Morel's apartment observed Morel enter a car outside of his residence. *Id.* They saw Defendant hand Morel a bag inside the car. *Id.* Morel then entered his apartment with the bag. *Id.* When the undercover officer later arrived at Morel's apartment, Morel met him in the officer's car and informed the officer he would have ten kilograms for him. *Id.* Morel returned to his residence. *Id.* The police also saw Defendant returning to Morel's residence. *Id.* Morel then emerged from his residence with the bag previously delivered by Defendant, which Morel proceeded to hand to the undercover officer. *Id.* After the transaction, NYPD officers and DEA task force members arrested Defendant, removing him from the car he was driving. *Id.* ¶¶ 12, 14.

A DEA chemical analysis on the substances sold to the undercover officer revealed 9.006 kilograms of cocaine. *Id.* ¶ 13. While a total of 10.0075 net kilograms were recovered from Morel's residence, only 9.006 kilograms are attributable to Defendant. *Id.*; *see also id.* ¶ 14.

On March 28, 2023, the Government filed a Complaint charging Defendant with knowingly and intentionally conspiring to distribute and possess with intent to distribute cocaine. Complaint, ECF No. 1

On April 24, 2023, a grand jury returned a two-count Indictment charging Defendant with (1) Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii); and (2) Distribution and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(ii).

Indictment, ECF No. 10. The Indictment also contains a criminal forfeiture allegation. *Id.* ¶¶ 3-4.

On June 15, 2023, Defendant pled guilty to Count One of the Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii). Plea Agreement ¶ 1, ECF No. 28. As part of his plea agreement, Defendant stipulated and agreed he was responsible for at least five but not more than 15 kilograms of a substance containing cocaine. *Id.* ¶ 2. Defendant also agreed not appeal or otherwise challenge his conviction or sentence if the Court imposes a term of imprisonment at or below 162 months. *Id.* ¶ 4.

## II.    Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to

3

consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. Family and Personal Background

Defendant was born October 19, 1989, in Queens, New York to Maximino Arqueta and Blanca Vasquez. PSR ¶ 45. Defendant has two full siblings, one maternal half-sibling, and seven paternal half-siblings. *Id.* ¶¶ 46-47. Defendant was raised primarily by his mother in a low-income household in New York. *Id.* ¶ 49. Defendant's father abandoned Defendant and his mother when Defendant was young. *Id.* Defendant's father was abusive toward Defendant's mother while he was still residing with them, hitting her in front of Defendant and his siblings. *Id.* While Defendant's father was not, for the most part, physically abusive toward Defendant, Defendant reported one incident where, after trying to stop his father from beating his mother, his father threw Defendant at a window. *Id.* As a result of this incident, Defendant required stitches and suffered permanent scarring. *Id.* When Defendant's father ultimately moved out, Defendant moved with his mother and siblings into a shelter. *Id.* According to Defendant, there were times when she had to work three jobs at once to provide for her children; Defendant's father provided no financial support. *Id.* While they were in the shelter, Defendant's mother met her now-husband, Defendant's stepfather. *Id.* Defendant has a good relationship with both his mother and stepfather, both of whom are aware of the instant prosecution and supportive of Defendant. *Id.* ¶ 45. While Defendant is not close with his half-siblings, he has good

4

relationships with his full siblings, both of whom are aware of the instant prosecution and remain supportive. *Id.* ¶¶ 46-48. Defendant's biological father passed away in 2023. *Id.* ¶ 45.

Between 2008 and 2012, Defendant was in a relationship with Cloe Fernandez, with whom he shares one son, who was 13 years old as of the filing of the PSR. *Id.* ¶ 50. Defendant reported having a close relationship with his son, who resides with Ms. Fernandez. *Id.* Ms. Fernandez and their son are aware of the instant prosecution and supportive of Defendant. *Id.* In 2020, Defendant entered a relationship with Schissiele Collado. *Id.* ¶ 51. The two also share a son, who was only one year old at the time the PSR was filed. *Id.*; *see also* Defense Sentencing Memorandum ("Def. Mem.") at 4-5, ECF No. 63. After Defendant's arrest for the instant offense, Ms. Collado cut off contact with Defendant and denied him visitation with their son. *Id.* Most recently, Defendant was in a relationship with Stephania Garcia. PSR ¶ 52. While the two ended their relationship after Defendant was remanded to custody, the two remain friends. *Id.* Ms. Garcia is aware of the instant prosecution and supportive of Defendant. *Id.*

2.  Educational and Employment History

Defendant graduated and received his diploma from Francis Lewis High School in 2010. *Id.* ¶ 66. In 2015, Defendant attended one semester at Berkeley College in New York, but ceased attending classes after he was incarcerated for a prior conviction. *Id.* ¶ 67. In 2020, Defendant enrolled in a mechanic program at New York Automotive and Diesel Institute, but left the program to care for the child he shares with Ms. Collado. *Id.* ¶ 68.

In May of 2022, Defendant began working as landscaper for his stepfather's company, Vasquez Brothers NYC. *Id.* ¶ 70. At some point between 2022 and 2024, Defendant took over the company and made $45,000.00 per year. *Id.* However, Defendant stopped working when he was remanded to custody in connection with the instant offense on January 26, 2024. *Id.* Prior

5

to running the landscaping company, Defendant reported working, at different times, as a barback, a waiter, and as a concrete laborer. *Id.* ¶¶ 72, 74

### 3. Prior Convictions

Defendant has five prior adult convictions. *Id.* ¶¶ 34-38. Defendant's first conviction, at age 19, was for a misdemeanor drug possession charge. *Id.* ¶ 34. The remaining four convictions, all of which Defendant received in his twenties, were for felonies: three related to the possession or sale of controlled substances, *id.* ¶¶ 35, 37-38, and one stemming from an attempted robbery, *id.* ¶ 36.

### 4. Physical and Mental Health

Other than continued stress stemming from the instant prosecution and the declining health of family members, Defendant reported no physical or mental health conditions. *Id.* ¶¶ 57-60.

### 5. Substance Abuse

Defendant began smoking marijuana in 2002 and using cocaine in 2004. *Id.* ¶¶ 61-62. While on pretrial supervision, Defendant tested positive for cocaine once on March 31, 2023, *id.* ¶ 4, and twice for marijuana in late 2023, *id.* ¶ 8. However, Defendant has since stopped using both drugs and his most recent urinalysis in January of this year was negative for all substances. *Id.* ¶¶ 61, 64, 65.

### 6. Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved conspiring to sell almost ten kilograms of cocaine, a dangerous, Schedule II drug. *See supra* Part I. The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Indictment, charging him with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii). This offense carries a minimum term of imprisonment of ten years and a maximum term of imprisonment of life. 21 U.S.C. §§ 846 and 841(b)(1)(A)(ii). For supervised release, Defendant faces a minimum term of five years and a maximum term of life. 21 U.S.C. § 841(b)(1)(A)(ii). If a condition of release is violated, Defendant may be sentenced to up to five years of imprisonment without credit for pre-release imprisonment or time previously served on post release supervision. 18 U.S.C. § 3583 (b), (e). Defendant is ineligible for probation because probation is expressly precluded by statute. 21 U.S.C. § 841(b)(1)(A)(ii).

Defendant faces a maximum fine in the amount of $10,000,000.00. 18 U.S.C. § 3571(b)(1); 21 U.S.C. § 841(b)(1)(A)(ii). However, Defendant's financial profile indicates he is unable to pay such a fine. PSR ¶ 81. Defendant also faces as a mandatory special assessment of

$100.00 per count, pursuant to 18 U.S.C. § 3013, which the Court is required to impose in all cases and will impose in this case.

Pursuant to Defendant's written plea agreement, he has also consented to the forfeiture of all rights, title, and interest in the following assets seized on March 27, 2023 and March 28, 2023, in Queens, New York: (i) one Glock 19 X 9mm caliber pistol with serial number BHTY071; (ii) one ammunition magazine; (iii) approximately 16 rounds of 9mm caliber ammunition; (iv) one Springfield Armory .45 caliber semi-automatic pistol with serial number XD724338; (v) one Smith & Wesson 9mm caliber semi-automatic pistol with serial number FCH0489; (vi) two ammunition magazines with a total of 19 rounds of .45 caliber ammunition; and (vii) one ammunition magazine with 13 rounds of 9mm caliber ammunition. Plea Agreement ¶ 6; *see also* 21 U.S.C. § 853.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 21 U.S.C. § 846 is U.S.S.G. §2D1.1. Pursuant to U.S.S.G. §2D1.1(a)(5), the base offense level is determined by the Drug Quantity Table in U.S.S.G. §2D1.1(c). Because Defendant is accountable for a net amount of 9.006 kilograms of cocaine, the base offense level is 30. U.S.S.G. §2D1.1(c)(5).

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1. This brings Defendant's total adjusted offense level to 27.

Defendant has a criminal history score of 12. U.S.S.G. §4A1.2; PSR ¶¶ 34-40. This results in a criminal history category of V. U.S.S.G. §5A. A total adjusted offense level of 27

8

and a criminal history category of V result in a Guidelines imprisonment range of between 120 and 150 months. U.S.S.G. §5A; PSR ¶ 83. All parties agree with these calculations. PSR ¶¶ 32, 83; Addendum to PSR at 3, ECF No. 59; Def. Mem. at 7; Government Sentencing Memorandum ("Gov't Mem.") at 4, ECF No. 64; *see also* Plea Agreement ¶ 2.

That said, the parties' recommendations as to an appropriate sentence vary.

Probation recommends a sentence of 120 months of custody, the statutory minimum, to be followed by five years of supervised release with special conditions. Probation Recommendation at 1, ECF No. 53-1. Probation also recommends the imposition of the $100.00 mandatory assessment. *Id.* Probation does not recommend the Court impose a fine, as Defendant appears unable to pay such a fine. *Id.* at 2.

Probation argues a sentence of 120 months of custody takes into account both Defendant's history and circumstances as well as the fact Defendant, by committing the offense of conspiracy to distribute and possess with intent to distribute cocaine, contributed to the widespread drug problem in this country. *Id.*

Defense counsel recommends a sentence of 120 months of custody, the statutory minimum. Def. Mem. at 9. While defense counsel recommended a three-year term of supervised release to follow any term of incarceration in his papers, at the sentencing hearing defense counsel informed the Court this was a typographical error and requested a term of five years, the mandatory minimum. *Id.* Defense counsel also requests Defendant be designated either to FCI Fort Dix or FCI Raybrook, as both facilities would enable Defendant to participate in the Residential Drug Abuse Program ("RDAP") and are located in areas in which family and friends could visit. *Id.*

Defense counsel argues a sentence of 120 months of incarceration is warranted in light of Defendant's "history and character, his immediate acceptance of responsibility, and his subsequent acquiescence to Pre-Trial's request to change his bail conditions and voluntary surrender to the MDC Brooklyn, and the totality of the circumstances." *Id.* at 7. While defense counsel recognizes the seriousness of the offense, he argues Defendant "was simply a street level drug dealer who was trying to remove himself from this conduct but fell prey to easy money when he was contacted by the co-defendant for assistance with a deal." *Id.* "Little did he realize that this one simple transaction would destroy the efforts he was making to change his life with his landscape company and move to New Jersey." *Id.* at 8.

Defense counsel also asks the Court to consider the fact that Defendant's co-defendant, "who actually brokered and made the deal with the undercover, and who possessed a gun in his home at the time of the sale, was given a much more lenient plea deal by the Government involving only the 5 year mandatory minimum," compared to Defendant's ten year mandatory minimum, despite the fact Defendant accepted responsibility for his conduct within weeks of his arrest. *Id.*

Defense counsel also argues specific deterrence would not be served by a lengthier sentence because Defendant "has already learned from and will continue to learn from his lengthy incarceration and the absence from the lives of his children. Being incarcerated at the age of thirty-four years old, with the realization that he will miss significant portions in the development of his young children's lives, and possibly never see his aging mother again, is a significant loss for any person involved in criminality, especially one involved in street level narcotics sales." *Id.* More generally, defense counsel argues Defendant is committed to reform, "wants to pay his debt to society, and is looking for learning and growth opportunities while

10

incarcerated, as he wants desperately to get back to his sons to be a role model and help guide them to lead a better and more virtuous life." *Id.* at 3.

This Court has read and considered the letters submitted by Defendant's loved ones and advocates. ECF No. 63-2. These letters describe Defendant as a compassionate, loving man who is acutely aware of his past wrongdoings, committed to rehabilitation, and determined to give back to his community and family. *Id.* The Court has also considered the statement Defendant made to Probation regarding his involvement in the instant offense. PSR ¶ 19. In his statement, Defendant admitted fully to his participation in the instant offense, took responsibility for his actions, and emphasized his commitment to leading a law-abiding life and setting a good example for his children going forward. *Id.* The Court appreciates these submissions and the words Defendant's advocates have said on his behalf.

The Government recommends a sentence within the Guidelines range of 120 to 150 months of imprisonment. Gov't Mem. at 5. In arguing for a sentence within the Guidelines range, the Government first argues "the offense of conviction is inherently serious." *Id.* at 4. The Government emphasizes the particularly dangerous nature of cocaine and argues "the quantity of cocaine the defendant conspired to sell had the potential to adversely impact a large population of this District." *Id.* Further, the Government argues Defendant's "fail[ure] to conform his conduct to the law" despite his significant criminal history and prior periods of incarceration suggest a significant prison term is necessary to "incapacitate and deter the defendant from engaging in additional criminal activity." *Id.* at 5. In addition to individual deterrence, the Government argues a Guidelines sentence would "send a message to others who are attempting to engage in the similar type of narcotics trafficking that is endangering the community." *Id.*

11

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

Probation notes an upward departure may be warranted pursuant to U.S.S.G. §5K2.21 because Defendant participated in additional criminal activity for which he was not held accountable in his Guidelines calculations. PSR ¶ 96. Specifically, Probation notes, pursuant to Defendant's plea agreement, the Government agreed not to bring further criminal charges against Defendant for possessing approximately 900 grams of cocaine, approximately one kilogram of fentanyl, a .45 caliber semi-automatic pistol, a 9mm caliber semi-automatic pistol, two magazines with 19 rounds of .45 caliber ammunition, and one magazine with 13 rounds of 9mm caliber ammunition. *Id.*

The parties have not drawn the Court's attention to any other applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

As discussed above, Defendant's co-defendant, who conducted the sale with the undercover officer resulting in Defendant's arrest, pled guilty to a lesser-included offense of Count One of the Indictment—which carries a mandatory minimum sentence of five years of incarceration and a maximum sentence of 40 years of incarceration—and is awaiting sentencing. *See supra* Part III(D); *see also* Morel Plea Agreement, ECF No. 61. The Court has taken into

account Defendant's co-defendant in evaluating the appropriate sentence. For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution is not applicable in Defendant's case.

### CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 120 months of imprisonment to be followed by five years of supervised release with both standard and special conditions. The Court also orders a $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2). The Court does not impose a fine because Defendant appears unable to pay a fine.

The Court expressly adopts the factual findings of the Presentence Investigation Report and Addendum thereto, ECF Nos. 53, 59, barring any errors contained therein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED,

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 10, 2024
Brooklyn, New York